JAMES SCHEE v. HENDRICKSON & CARPER, J. I. CARPER, Appellants, J. F. HENDRICKSON, Appellee.

Negotiable instruments: FIRM NOTE: INDIVIDUAL LIABILITY: EVIDENCE. In this action against a firm upon a note signed by the firm name, the evidence is reviewed and held to show that the same was executed to consumate an individual transaction of one of the partners with the plaintiff, and that the other partner was not liable.

*Appeal from Warren District Court.*—HON. J. H. APPLEGATE, Judge.

SATURDAY, NOVEMBER 22, 1913.

ACTION against defendants on a promissory note of $2,247 signed ''Hendrickson & Carper.''   Judgment by de-

fault was entered against Hendrickson. Carper answered by denying that Hendrickson & Carper ever executed the note and alleging that Hendrickson was without authority to attach the firm name thereto and denied that he was indebted thereon. Defendant also pleaded want of consideration, that the note was given by Hendrickson individually for property bought by him, and by way of counterclaim prayed for an accounting. The reply put in issue the allegations of the counterclaim, and plaintiff filed an amendment to his petition praying judgment on a note of $1,200 executed by Hendrickson to plaintiff in April, 1909, by signing his own name thereto and that of Hendrickson & Carper. Hendrickson pleaded that this was given in settlement between Hendrickson & Carper and Schee and several items had been omitted which he asked to be credited on the note. The cause was transferred to the equity side of the calendar, and on hearing judgment was entered against Carper on the note of $2,247. Credits were allowed Hendrickson reducing the other note to $745 and interest and judgment entered thereon. Judgment for that amount was also entered against Carper and the decree established the first judgment as a lien against an undivided one-half of one hundred and twenty acres of land in Missouri and the last judgment against an undivided one-half of one hundred and fifty acres of land in Minnesota. Other issues were decided adversely to plaintiff. The defendant Carper appeals.—*Modified* and *Affirmed.*

*Coffin & Hippee,* for appellants.

*Berry & Watson,* for appellee, Passwater.

*O. C. Brown,* for appellee, Schee.

LADD, J.—The firm of Hendrickson & Carper was composed of J. I. Carper and J. F. Hendrickson. The latter attached the firm name to the promissory note for $2,247, dated

March 1, 1904, and payable on or before March 1, 1909; bearing interest at the rate of 7 per cent. per annum.   Judgment by default was entered against Hendrickson, but Carper denied that the indebtedness was that of the firm and alleged that Hendrickson executed the note individually and that the firm name was attached thereto without authority.   The partnership was formed in 1902 for the purpose of dealing in real estate and terminated in 1906 or 1907.   The consideration for the note was an undivided one-half of one hundred and twenty acres of land in Chariton county, Mo., and, at the time the note was given, a contract, in words following, was entered into:

This agreement entered into this 1st day of March, 1904, by and between James Schee of College View, Neb., party of the first part, and Hendrickson & Carper of Iowa, party of the second part, witnesseth:   James Schee has this day sold to Hendrickson & Carper the undivided one-half interest in the following described real estate, to wit:   S. W. ¼ of the S. W. ¼ and the N. W. ¼ of the S. W. ¼, section 32, and the S. E. ¼, S. E. ¼, section 31, township 54 north, range 18 west, Chariton county, Missouri, for the sum of twenty-two hundred and forty-seven dollars, evidenced by certain promissory notes for said amounts dated March 1, 1904, and drawing 7 per cent. interest from date.   Said note payable on or before five years from date.   It is agreed and understood that the said James Schee is to hold title to said land until said note is paid, at which time he agrees to execute a warranty deed to the undivided one-half interest in the above described land.   [Signed]   James Schee.   J. F. Hendrickson.

Schee testified that, at the time that Hendrickson signed the contract individually, he knew that on all other occasions, when acting for the firm, he had signed the firm name and that, had he noticed it, he would have required it to be so signed. On the other hand, Hendrickson swore that he and Carper habitually signed their individual names in transacting firm business, though Carper did not so understand it.   According

to Schee, the transaction occurred at the banking house of Schee Bros. in Indianola, in which Schee was interested, while Hendrickson swore that, according to his memory, "the deal was made at Des Moines in Hendrickson & Carper's office." Schee was certain Carper was not present, while Hendrickson did not "just remember whether Carper was present," but thought he was, and swore that he and Carper had agreed on the deal in advance and that Carper insisted upon closing it. But Hendrickson signed the accompanying contract individually, and Carper testified that he never heard of the transaction until after the note was due; and Schee admitted that though the interest was payable annually and he had repeatedly communicated with Carper, neither the note nor the interest was mentioned to him prior to April, 1909. The one hundred and twenty acres of land, described in the contract, and for a half of which the note is said to have been given, had belonged to Schee Bros. and had been sold to plaintiff at $35 per acre by Hendrickson & Carper, as agent of said firm, in which plaintiff was interested. Though he examined the land, he did not ascertain that it was what is known as overflow land until afterwards, whereupon he requested Hendrickson & Carper to sell it first at $40 and later at $35 per acre. Hendrickson then proposed that, if Schee would let him trade on that land, he would get him out whole and shortly afterwards arranged to exchange the other one hundred and twelve acres on a stock of goods hereinafter mentioned; and Schee testified that at the time of that deal "I asked him what about the one hundred and twenty. I wanted to sell it all. He said that would be good. He said he wouldn't mind taking a share in that. And along after that, I don't know how long after that, we finally made a deal whereby he took a half interest in this one hundred and twenty acres down there and gave me this $2,247 note." The evidence discloses that at that time the land was not worth to exceed $5 or $6 per acre, and if Hendrickson & Carper were under any obligation, legal or moral, to share Schee's

loss, the record does not disclose what it was.  The land belonged to a partnership of which the purchaser was a member, and there is no pretense that the agent misrepresented the premises or misled Schee in any manner.  Why, then, should Hendrickson purchase a half interest in this land for the firm, of which he was a member, at five or six times its value?  Not only so purchase it but add $147 to the price and date the note back more than a month prior to the negotiations and more than a year before its execution?

Moreover, Schee's account of the transaction indicates that it was with Hendrickson individually.  True, he stated as a conclusion that it was business of the firm, but his recital of what was said and done leaves little doubt but that the transaction was that of Hendrickson individually.  In addition to excerpt quoted, he testified:

When he got the one hundred and twelve acres I wanted him to take it all, but he insisted that it was well worth it and he might take a half interest in it, and later on we agreed, and he gave me his note.  This was after the meeting I had with him at College View when I put up the $2,500.  We talked about the one hundred and twenty when he got the one hundred and twelve but I know that these contracts don't bear me out in this, but my memory is that I let him have the one hundred and twelve acres and I still had the other, and I asked him if he would not buy that, and he said that he would agree to take a half interest in it, and long after that, after he went home, I met him back here and took his note for a half interest in it at $35 per acre, and I think we added a year's interest into the note.  I don't know just whether we dated the thing back or forward, or how we did it, but we agreed to add a year's interest to the $35 per acre.  In our talk at College View I wanted Hendrickson to take the balance of the two hundred and thirty-two acres, and he said that it was the best land, said he would be willing to take an interest in it, and that was finally done by him giving the note.  He said if I would give him a good long time to trade it off and take a note for five years he would take it on those terms.  I don't know just how long after he was in College View he did actually buy the inter-

est in the one hundred and twenty acres. I think we were at this bank in Indianola when we closed the deal, but I don't remember the circumstances. I think it might have been six or twelve months after he visited me at College View.

Schee does not claim that Hendrickson represented that the deal was for the firm, and he never treated it as such. Numerous letters passed between him and Carper, and, though the latter was asked to remit half of taxes, interest, and expenses in examining land he and Hendrickson & Carper were interested in, no allusion was ever made to this Missouri land or to the taxes paid thereon or the interest on this note until May, 1909. Hendrickson and Schee had settled in April of that year by the former executing to the latter a note for $1,200 and on May 8th following, Schee wrote Carper:

I regretted that you could not stay long enough to help adjust things between us but we did the best we could which was not very satisfactory but it stands this way John signed a note for 1200 which when paid I will have my money all back except $300 and I have the Minn. land in lieu of the Mo. Keitsvill land one hundred and twelve acres which cost me $3920.00 the Minn. land we thought was worth above the mortgage at the time we bought it $500 or $600 dollars so you see where I am at I will send you the 1200 note to sign if you will let me hear from you. Well, write me and I will send the note to sign if you write me to that effect.

Again on May 17th he wrote Carper:

You probably know and remember John told me if I would let him trade the Keetsville land he would get me out whole on it which I did and put up some cash and now the matter stands this way when this 1200 note is paid I will still lack three hundred and a little over of having my cash all back and I will have the equity in the Minn. land for the one hundred and twelve acres clear land that you fellows traded at Keetsvill. I receipted and will lose several hundred as you can readily see. I paid the land Co. 4000 for this land when I bought it but so far as I see you fellows

hasent made any thing so I will be satisfied when I get this 1200. I will enclose this note and you can return it when you write.

No mention in either of any note such as sued on. In response to this, Carper returned the note and stated Schee had obtained from a mortgage given by Hendrickson to him for $5,500, on Kansas land, $2,250 more than was due him and requested remittance of that amount. Schee answered:

Yours of the 18 at hand and will say you have your wires teribly crossed on everything. The loan I took on Hendrickson land was for 3500 instead of 5500 nearly 2100 of that was for cash I loaned at the time the rest was 1250 and some Int. making over 1400 nearly 1500 I don't remember exact but this is nothing here nor there as I have a settlement with them on the deal but I still hold the Hendrickson and Carper note for the Keetsvill land that is one-half interest in one hundred and twenty acres for 2247 made April 1904 and no Int. paid. Hendrickson traded off one half of the land belonging to boath of us for 5500 dollars worth of the Delonoga mining stock now who ever pays this note will be entitled to one half of the mining stock and a fourth interest in the one hundred and twenty acres of land I still hold title instead of mortgage. So I hope you will take up the notes and get title to the land and mining stock.

This was the first intimation Carper had concerning this transaction, and according to his testimony he was not aware of what had been done until hearing Hendrickson's deposition read on the trial.

Not only does Schee's testimony fail to show the deal wherein the note was executed by Hendrickson was a firm transaction, but it tends strongly to prove it to have been an individual arrangement of Hendrickson's and the subsequent conduct of the parties is entirely consistent therewith. In further confirmation that it was such, Carper testified that: "Hendrickson told me in the late winter of 1904 that Jim Schee was sick of his trade and that he had about concluded

to take the one hundred and twenty acres off of his land. He said: 'I can get rid of it somehow. The firm don't need to have anything to do with it.' That was the extent of my knowledge of it. I never knew how he closed the deal or when he closed it. He never told me at any time that the firm of Hendrickson & Carper had anything to do with it. He said that he would take and handle it personally." But Hendrickson's testimony was to the effect that it was understood between him and Carper that they would buy a half interest in the land; that Carper knew all about the purchase and execution of the note. He does not undertake to recite any conversation on the subject nor to indicate where such an understanding was had but asserts these matters as mere conclusions. His deposition as a whole disclosed that his memory was at fault as to many transactions and that he was confused as to others.

Without detailing the numerous discrepancies in his testimony, it is enough to say that, upon comparing it with that of other witnesses in the case and the circumstances shown in connection with the contract entered into at the time the note was given, we reach the conclusion that the note, though signed "Hendrickson & Carper," was executed in consummating a deal by Hendrickson individually with plaintiff, and that for this reason Carper is not liable thereon.

II. Hendrickson & Carper had an opportunity to exchange one hundred and sixty acres of land owned by Carper and one hundred and twelve acres of the two hundred and thirty-two acre tract in Missouri, belonging to Schee, for a stock of goods owned by one Kennedy by paying the latter $2,500 as a difference. Hendrickson went to see Schee, who resided in Nebraska, and in pursuance of arrangements then had, Schee advanced the money and transferred the one hundred and twelve acres of land and the exchange was made. Both Schee and Hendrickson testified that, to induce Schee to do this, the latter guaranteed him against loss. Carper insists that the circumstances are such as to warrant the rejection

of this testimony. It is not claimed the guaranty extended to the land but that it had reference to the money only. While the record contains much indicating this was not likely to have happened, there was nothing utterly inconsistent therewith, and, without reviewing the evidence in detail, we are content in affirming the conclusion with respect to the accounting reached by the district court.

Judgment will be modified by eliminating that portion adjudging defendant Carper liable on the note for $2,247 and, as so *Modified*, is *Affirmed*.

WEAVER, C. J., and EVANS and PRESTON, JJ., concur.